OPINION OF THE COURT BY JUSTICE WRIGHT
I. BACKGROUND
Appellant, Gregory Traft, was driving during the early morning hours and Boone County Deputy Sheriff Adam Schepis was traveling in the opposite direction. Schepis's police car was equipped with a camera that could read license plates in order to provide information about the vehicle and the vehicle's registered owner to law enforcement officers. The record check performed by the license plate camera indicated that Traft, the vehicle's registered owner, had an active warrant for failing to appear in Court.[1] Schepis turned and followed Traft, and eventually pulled the vehicle over. Traft asserts that it is undisputed that he committed no traffic infractions while Schepis followed him.
Based on his knowledge that the owner of the vehicle was subject to a warrant for failure to appear, Schepis stopped the vehicle registered to Traft. As it turned out, Traft was the driver. Once he stopped the truck, Schepis noticed several signs that Traft was intoxicated. According to the citation, Traft failed field sobriety tests, admitted to drinking too many beers, and had a blood, alcohol level of nearly twice the legal limit according to Schepis's portable breathalyzer. Schepis arrested Traft for driving under the influence and on an outstanding warrant for failure to appear in court.
At trial, Traft filed a motion to suppress the traffic stop, arguing that Schepis violated his right to privacy when he reviewed his license and registration information for no reason. The Boone District Court denied that motion and Traft entered a conditional guilty plea to the DUI charge. He appealed to the Boone Circuit Court, which affirmed. The Court of Appeals granted Traft's motion for discretionary review and affirmed. Traft then filed a motion for discretionary review with this Court, which we granted. We also affirm.
II. ANALYSIS
Because Traft's allegations of error stem from what he argues to be violations of his rights under the Fourth Amendment to the United States Constitution,[2] we will *649 begin our analysis there. The Fourth Amendment provides, in pertinent part: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures shall not be violated...." "Since Katz v. United States, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 ... (1967), the touchstone of Fourth Amendment analysis has been the question whether a person has a 'constitutionally protected reasonable expectation of privacy.' " Oliver v. United States, 466 U.S. 170, 177, 104 S.Ct. 1735, 80 L.Ed.2d 214 (1984) (quoting Katz, 389 U.S. at 360, 88 S.Ct. 507 (Harlan, J., concurring)). Therefore, our analysis turns upon whether Traft had a reasonable expectation of privacy in either his license plate or what he terms his "protected personal information" gleaned therefrom.
Traft argues the information gathered by Schepis from his license plate was protected under the Fourth Amendment. In determining whether this is the case, we find Justice Harlan's explanation from his concurring opinion in Katz instructive. Therein, Justice Harlan stated: "there is a twofold requirement, first that a person have exhibited an actual (subjective) expectation of privacy and, second, that the expectation be one that society is prepared to recognize as 'reasonable.' " Katz, 389 U.S. at 361, 88 S.Ct. 507. Furthermore, "the State's intrusion into a particular area ... cannot result in a Fourth Amendment violation unless the area is one in which there is a 'constitutionally protected reasonable expectation of privacy.' " New York v. Class, 475 U.S. 106, 112, 106 S.Ct. 960, 89 L.Ed.2d 81 (1986) (quoting Katz, 389 U.S. at 360, 88 S.Ct. 507 (Harlan, J., concurring)).
Here, Traft certainly had no reasonable expectation of privacy in his license plate-either subjectively or objectively. The plate was displayed on the exterior of Traft's vehicle (as required by law), while Traft drove on a public street. Likewise, Schepis was driving on the same public street when he observed Traft's vehicle and collected the information from his license plate. It is well settled that "[w]hat a person knowingly exposes to the public ... is not a subject of Fourth Amendment protection." Katz, 389 U.S. at 351, 88 S.Ct. 507. Furthermore, "objects falling in the plain view of an officer who has a right to be in the position to have that view are subject to seizure...." Harris v. United States, 390 U.S. 234, 236, 88 S.Ct. 992, 19 L.Ed.2d 1067 (1968). We agree with the Sixth Circuit, which held:
No argument can be made that a motorist seeks to keep the information on his license plate private. The very purpose of a license plate number, like that of a Vehicle Identification Number, is to provide identifying information to law enforcement officials and others. The reasoning in [ New York v. ] Class [, 475 U.S. 106, 106 S.Ct. 960, 89 L.Ed.2d 81 (1986) ] vis-a-vis Vehicle Identification Numbers applies with equal force to license plates: "[B]ecause of the important role played by the [license plate] in the pervasive governmental regulation of the automobile and the efforts by the Federal Government to ensure that the [license plate] is placed in plain view," a motorist can have no reasonable expectation of privacy in the information contained on it. 475 U.S. at 114, 106 S.Ct. 960.
*650 United States v. Ellison, 462 F.3d 557, 561 (6th Cir. 2006).
Beyond the license plate itself, Traft argues that Schepis's use of the license plate reader should have ended when the deputy discovered the truck was not stolen, as Schepis had no reason to believe Traft was engaging in any illegal activity. Traft argues that Schepis should not have used the plate reader in order to conduct an "arbitrary" search of his "personal information." He likens this law enforcement technology to wiretapping and insists that this "search" of his personal information violated his Fourth Amendment rights. Traft insists that he had a reasonable expectation of privacy in his personal information.
Traft takes issue with the "plethora of personal information at an officer's fingertips" through the use of technology such as license plate readers. He cites a number of cases disfavoring searches, such as Delaware v. Prouse, 440 U.S. 648, 663, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979). In Prouse, the United States Supreme Court held that it was a Fourth Amendment violation for an officer to stop a vehicle to check the driver's license and registration absent "at least articulable and reasonable suspicion that a motorist is unlicensed or that an automobile is not registered, or that either the vehicle or an occupant is otherwise subject to seizure for violation of law." Here, Schepis did not pull over the truck Traft was driving without an articulable and reasonable suspicion that the driver was "subject to seizure for violation of law." Schepis knew that the individual to whom the vehicle was registered had an active bench warrant for failure to appear. Therefore, Traft's reliance on Prouse in support of his position is not well taken.
Traft posits that "a law abiding motorist has the right to be left alone when operating his motor vehicle" and goes so far as to say that Traft was such a law abiding motorist. However, we take issue with this contention. Traft was, indeed, a fugitive from justice with an active warrant for his arrest. While Traft attempts to compare his case with those involving warrantless searches and seizures, that is simply not the case here.
The information Schepis accessed regarding Traft through his license plate number was a matter of public record. It was not "protected" information, as Traft would have this Court believe. Any member of the public could have obtained the information that Traft had a warrant for failing to appear in the Boone District Court. What is more, the information Traft claims to be protected was actually an order directed to police officers-officers like Schepis-to detain Traft. It defies logic that this warrant would be protected from the very individuals it directs to act.
Traft would have us hold that the fact that the license plate reader was employed in gathering his information somehow amounts to a violation of his privacy rights. We decline to do so. In our view, the use of the license plate reader is no different than had Schepis used his police radio to ask a dispatcher to run Traft's license plate number in the database. The same information would have resulted. The mere use of the technology employed here makes no difference in the outcome.
Finally, Traft argues that Schepis "lacked both probable cause and a reasonable articulable suspicion to initiate the stop." He focuses on the fact that the driver committed no traffic infractions as Schepis followed him before activating his blue lights and pulling him over. In fact, he says that Schepis could not even discern the gender or race of the truck's driver, much less identify him as the driver. He complains that Schepis "took no additional *651 investigative steps to determine who was driving the vehicle before initiating the traffic stop." He argues that the Court of Appeals misstated the law on traffic stops when it stated that Schepis "did, however, have the right to stop the vehicle and ask for identification." He complains that the Court "failed to cite any supporting precedent" for this statement. While we will delve further into this issue than the Court of Appeals did below, we agree with its ultimate conclusion that the stop was proper.
Traft argues that Schepis lacked both a reasonable articulable suspicion and probable cause to stop him. We will begin by clarifying the proper standard. As we stated earlier, in Prouse, the United States Supreme Court held that "except in those situations in which there is at least articulable and reasonable suspicion that a motorist is unlicensed or that an automobile is not registered, or that either the vehicle or an occupant is otherwise subject to seizure for violation of law, stopping an automobile and detaining the driver in order to check his driver's license and the registration of the automobile are unreasonable under the Fourth Amendment." 440 U.S. at 663, 99 S.Ct. 1391. Therefore, we are tasked with determining whether Schepis had an articulable and reasonable suspicion (not probable cause) when he pulled Traft over.
Before initiating the stop, Schepis was armed with the knowledge that the individual to whom the vehicle was registered had an active arrest warrant against him. While it is true that Schepis did not know the identity of the driver when he initiated the stop, we hold that the fact that the owner of the vehicle was subject to seizure for violation of law creates an articulable and reasonable suspicion for an officer to initiate a traffic stop. This was not a case of a "snooping deputy" harassing a law-abiding citizen, as Traft argues. Rather, it was a case of an officer carrying out his sworn duty and abiding by the terms of a warrant issued by a court of this Commonwealth.
III. CONCLUSION
Traft's Fourth Amendment rights were not violated by Schepis obtaining information linked to his license plate, which was displayed in a place where Traft had no reasonable expectation of privacy. Furthermore, the existence of an active warrant against the vehicle's owner created the articulable and reasonable suspicion required to stop the vehicle. Therefore, we affirm the Court of Appeals' holding that the district court properly denied Trait's suppression motion.
Minton, C.J.; Cunningham, Hughes, Keller, Venters, and Wright, JJ., Sitting.
All concur.
VanMeter, J., not sitting.

Traft makes much ado about the fact that the warrant stemmed from his failure to appear in Boone District Court on a misdemeanor charge for passing a cold check. However, the nature of the underlying charge makes no difference to our analysis. As KRS 431.005 provides, a peace officer "may make an arrest ... [i]n obedience to a warrant...." There was a warrant pending for Traft's arrest-and it makes no difference that his original charge was a misdemeanor.

Traft states in his brief that "Section Ten [of the Kentucky Constitution] provides greater protections than the Fourth Amendment." However, we have long linked our analysis under Section Ten with the Fourth Amendment. In LaFollette v. Com., 915 S.W.2d 747, 748 (Ky. 1996), abrogated on other grounds by Kyllo v. United States, 533 U.S. 27, 121 S.Ct. 2038, 150 L.Ed.2d 94 (2001), we stated, "Section 10 of the Kentucky Constitution provides no greater protection than does the federal Fourth Amendment." (citing Estep v. Commonwealth, 663 S.W.2d 213 (Ky. 1983) ). Therefore, we will analyze this issue pursuant to Fourth Amendment case law.